CLERK'S OFFICE U.S. DIST. COURT
AT LYNCHBURG, VA
FILED

MAY 31 2012

JULIA C. DUDLEY, CLERK
BY: /s/
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
LYNCHBURG DIVISION

| | |
|---|---|
| AVIVA, LTD.,<br><br>　　　　　　　　　　　*Plaintiff,*<br><br>v.<br><br>CARTER MACHINERY CO., INC.,<br><br>　　　　　　　　　　　*Defendant.* | CIVIL ACTION NO. 6:11-CV-00030<br><br>MEMORANDUM OPINION<br><br>JUDGE NORMAN K. MOON |

　　　Plaintiff Aviva Ltd. is the sole owner of the M/Y Charade (also the "Charade"), a 153' motor yacht registered in the Cayman Islands. Defendant Carter Machinery is engaged in the business of repairing, maintaining, and overhauling marine engines, and is located in Lynchburg. The complaint, alleging breach of contract and negligence, is an admiralty and maritime claim within the meaning of Rule 9(h) of the Federal Rules of Civil Procedure and is within this court's admiralty jurisdiction pursuant to 28 U.S.C. § 1333.

　　　Defendant filed a motion to dismiss the negligence count, on the ground that Plaintiff's alleged economic losses are not recoverable in tort because the overhauled engines "that are the subject of plaintiff's damage claim" are "the object of the contract," and thus Plaintiff can sue only for breach of contract. The motion has been fully briefed and heard and is ripe for decision. Because Plaintiff has alleged damage to the Charade itself, entirely apart from the alleged damage to the overhauled engines, the motion will be denied.

I.

　　　On September 3, 2008, Plaintiff wired $15,000.00 to Defendant, accepting Defendant's

offer of August 28, 2008, to conduct an in-hull overhaul of two Caterpillar 3304 Gen Set engines on the Charade. Plaintiff alleges that it entered into this contract based on Defendant's representations that it was fully qualified and competent to properly rebuild the Charade's two generators, but that Defendant "failed to perform the work in a workmanlike manner" and, "[d]ue to faulty workmanship on the part of defendant, the port and starboard generators of M/Y Charade were damaged and have had, among other defects, a continuing over-consumption of oil problem."

Pursuant to Fed. R. Civ. P. 12(b)(6),[1] Defendant moves to dismiss Count II, which alleges negligence. Citing *East River S.S. Corp. V. Transamerica Delaval, Inc.*, 476 U.S. 858, 871-72 (1986), Defendant contends that "[t]here is no tort remedy in maritime law for purely economic loss stemming from negligent performance of a contract for professional services where those services are related to the repair of a vessel." In Defendant's view, "the four corners of the Amended Complaint makes clear that, in Count II, plaintiff is attempting to recover purely economic losses stemming from Carter's alleged negligent performance of the repair contract."

Plaintiff counters that Count II of the complaint "alleges five (5) different negligent acts

---

[1] When considering a motion to dismiss for failure to state a claim upon which relief can be granted, I apply the pleading standard refined by *Bell Atlantic v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937 (2009). *See also* Fed. R. Civ. P. 12(b)(6), Fed. R. Civ. P. 8. Plaintiffs must allege facts that "state a claim to relief that is plausible on its face," *i.e.*, facts that "have nudged their claims across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570. A claim is plausible if the complaint contains "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," and if there is "more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at ___, 129 S. Ct. at 1949. The following long-held rule still stands: "In evaluating a Rule 12(b)(6) motion to dismiss, a court accepts all well-pled facts as true and construes these facts in the light most favorable to the plaintiff in weighing the legal sufficiency of the complaint." *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 255 (4th Cir. 2009) (citations omitted).

which were the direct and proximate cause of damage to Plaintiff's property."[2] In Plaintiff's view, "*East River* is inapplicable to the case at bar because it does not address negligent performance of services related to the repair of a vessel."

As Plaintiff points out, in *East River* the petitioners sought to hold the respondent strictly liable for design defects in the high-pressure turbines respondent designed, manufactured, and installed. 476 U.S. at 859, 861. The Supreme Court recognized a general theory of liability for negligence in admiralty law, but sought to determine whether admiralty also "incorporates principles of *products liability*, including strict liability." *Id.* at 865 (emphasis added). The Court held that, "whether stated in negligence or strict liability, no *products-liability* claim lies in

---

[2] Paragraph 31 of the amended complaint states that "defendant had the duty to use reasonable care and conduct the work in accordance with generally accepted practices," and Paragraph 32 states that

> [t]he overhaul and repair work performed by defendant was conducted negligently as follows:
>
> (a) parts were not assembled according to specification, in particular, the insert was left too high resulting in an improperly sealing cylinder head gasket, and the piston liner protrusion differences exceeded allowed tolerances per manufacturer specifications;
>
> (b) machine work was improperly performed on counter bore, and counter bore was cleaned by means of sanding pads on a dye grinder;
>
> (b) [*sic*] the engine was not dismantled prior to undertaking the work allowing cast iron filings to fall between the journal and bearing surface;
>
> (c) quality control was not maintained such that waste cast iron filings were allowed to contaminate the parts and mar the surfaces; and
>
> (d) the engine was not cleaned properly after the repair.

Paragraph 33 states that "[t]his negligence was the direct and proximate cause of damages to plaintiff's property," and paragraph 34 states that, "[b]y reason of the above, plaintiff has been damaged in the sum of $195,023, no part of which has been paid although duly demanded."
Paragraph 9 of the complaint states that, "[o]n September 2, 2008, defendant began [the] engine overhaul work . . . but failed to perform the work in a workmanlike manner. All overhauled parts were installed by defendant. From the time the overhaul was complete and the ship was put back in service, it was clear that defects existed."

admiralty when the only injury claimed is economic loss." *Id.* at 876 (emphasis added). The Court noted, "We do not reach the issue whether a cause of action can ever be stated in admiralty when the only damages sought are economic." *Id.* at 871 n. 6.

Plaintiff maintains that it "does not contend that defendant negligently designed or manufactured any product" and that, because it "is not asserting a products-liability claim," the instant matter "is clearly distinguishable from *East River*."

In response, Defendant points out that, in *East River*, the Supreme Court stated that "a manufacturer in a commercial relationship has no duty under either a negligence or strict products liability theory to prevent a product from injuring itself." *Id.* at 871. Defendant adds, "[s]o, where a product, *i.e.*, object of a contract, causes damages only to itself, an aggrieved party should use breach of contract and warranty actions." Citing *East River*, 476 U.S. at 872. Defendant states that, "[i]n the case at bar, the object of the contract was the repair of generators and it is those generators that are the subject of plaintiff's damage claim."

## II.

"[W]hen a product 'injures itself' because one of its component parts is defective, a purely economic loss results to the owner for which no action in tort will lie." *Sensenbrenner v. Rust, Orling & Neale, Architects, Inc.*, 236 Va. 419, 424 (1988) (citing *East River*, 476 U.S. at 869, 871)). "The economic loss doctrine serves as a basis" for distinguishing between claims sounding in tort and those sounding in contract. *Princess Cruises, Inc. v. General Electric Co.*, 950 F. Supp. 151, 156 (E.D. Va. 1996), *rev'd on other grounds*, 143 F.3d 828 (4th Cir. 1998); *see also Maersk Line Ltd. v. Care*, 271 F. Supp. 2d 818, 823 (E.D. Va. 2003).

Tort law is not designed . . . to compensate parties for losses suffered as a result

of a breach of duties assumed only by agreement. That type of compensation necessitates an analysis of the damages which were within the contemplation of the parties when framing their agreement. It remains the particular province of the law of contracts.

*Sensenbrenner*, 236 Va. at 425 (citation omitted).

If a plaintiff does not allege a breach of any duty outside that imposed by the contract, nor damage to any property or any other injury other than damage to the object of the contract, then the plaintiff must "seek recovery under the contract. Any other result [would] further dilute[] the role of contract law in our legal system." *Maersk*, 271 F. Supp. 2d at 823; *see also Nathaniel Shipping, Inc. v. General Elec. Co., Inc.*, 932 F.2d 366, 368 (5th Cir. 1991) (plaintiff's rights arose in contract, thus no negligence claim).

In this case, the Charade is not alleged to have "'injure[d] itself' because one of its component parts [was] defective"; rather, the Charade itself is alleged to have been harmed by Defendant's defective handling of one of its component parts. Plaintiff alleges harms caused by breaches of duties not contemplated by the contract, particularly alleging harms done to the "Charade's operations," the "demand[]" of "time and attention from the captain and his crew," the "hind[rance]" of "the owner's use and enjoyment of the yacht," the "supply" of "additional oil . . . due to the overconsumption" allegedly caused by Defendant's negligence, "travel to repair sites at defendant's request," and the "dockage, electrical, and service" required "during repairs." As I previously observed, Count II of the complaint "alleges five (5) different negligent acts which were the direct and proximate cause of damage to Plaintiff's property,"[3] and exhibits attached to the complaint and explicitly incorporated by reference into the amended complaint document the damages that do not appear to have been "within the contemplation of

---

[3] *See* n. 2, *supra*.

the parties when framing their agreement." *Sensenbrenner*, 236 Va. at 425 (citation omitted). These damages are specified as follows: "[t]ravel to Florida at [Defendant's] request for repairs to be made," "[d]ockage[ &] [e]lectrical & [d]aily service during [Defendant's] repairs," "[a]dditional oil cost," "[a]dditional man-hour monitoring cost," [a]dditional man-hour cleaning cost," and "[a]dditional contracted cleaning to remove soot."

In sum, and contrary to Defendant's assertion, Plaintiff's negligence claim does not seek economic losses for damage to the generators that were the object of the repair contract; rather, Plaintiff has alleged damage to the Charade itself, entirely apart from the alleged damage to the overhauled engines. Accordingly, Plaintiff has sufficiently alleged negligence to survive Defendant's motion to dismiss count II of the amended complaint.

### III.

For the stated reasons, the motion (docket no. 21) to dismiss count II of the amended complaint will be denied. An appropriate order accompanies this memorandum opinion.

Entered this 31st day of May, 2012.

*[signature]*
NORMAN K. MOON
UNITED STATES DISTRICT JUDGE